# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAIAH QUINONEZ,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ON HABEAS CORPUS,<br><br>　　　　　Respondent. | Case No. 1:21-cv-01163-ADA-SAB-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF No. 8) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.

## BACKGROUND

On April 13, 2018, Petitioner was convicted after a jury trial in the Merced County Superior Court of robbery and assault with a semiautomatic firearm. The jury also found true the special allegations that Petitioner personally discharged a firearm causing great bodily injury. (CT[1] 184–87.) The trial court sentenced Petitioner to an indeterminate imprisonment term of thirty years to life and imposed $10,140 in fines and fees. (CT 204, 207, 210–13.) On July 29, 2020, the California Court of Appeal, Fifth Appellate District affirmed the judgment. People v. Quinonez, No. F077796, 2020 WL 4345100 (Cal. Ct. App. July 29, 2020). On October 14, 2020, the California Supreme Court denied Petitioner's petition for review. (LDs[2] 14, 15.)

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent. (ECF No. 20.)
[2] "LD" refers to the documents lodged by Respondent. (ECF No. 20.)

1

On August 2, 2021, Petitioner commenced the instant federal habeas proceeding by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) As the petition was mixed—containing both exhausted and unexhausted claims—the Court granted Petitioner leave to amend the petition in order to delete his unexhausted claims. (ECF No. 7.) Thereafter, Petitioner filed a first amended petition ("FAP"), raising the following claims for relief: (1) instructional error; and (2) unlawful imposition of fine and fees, in violation of due process. (ECF No. 8.) Respondent filed an answer. (ECF No. 19.)

## II.

## STATEMENT OF FACTS[3]

> Quinonez, along with two companions, went to a convenience store early one morning just before 3:00 a.m. Outside the store, the trio encountered a transient male and attacked him. Quinonez and an unidentified companion then entered the store.
>
> Quinonez held the store clerk at gunpoint and demanded money. The unidentified male went behind the clerk and stole cigarettes. The third male stood watch outside. Quinonez then shot the clerk in the neck, breaking his clavicle, a rib, and collapsing his lung. The trio fled but Quinonez was apprehended minutes later.

Quinonez, 2020 WL 4345100, at *1.

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of the Merced County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

---

[3] The Court relies on the California Court of Appeal's July 29, 2020 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538 U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id. In addition, the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v. Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v. Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552 U.S. at 126; Moses, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable

application of, [the] clearly established Federal law." Lockyer, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13; see also Lockyer, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" Williams, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; see also Lockyer, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. Id. If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The Court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011). If the last reasoned state court decision adopts or substantially incorporates the

4

reasoning from a previous state court decision, this Court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99–100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the state courts reach a decision on the merits but there is no reasoned decision, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98. This Court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102.

## IV.

## REVIEW OF CLAIMS

**A. Instructional Error**

In his first claim for relief, Petitioner asserts that the trial court erred by giving an instruction on conspiracy. (ECF No. 8 at 4.)[4] Respondent argues there is no clearly established federal law prohibiting a trial court from instructing a jury with a factually inapplicable but accurate statement of state law. (ECF No. 19 at 10.) This claim was raised on direct appeal to the

---

[4] Page numbers refer to the ECF page numbers stamped at the top of the page.

California Court of Appeal, which denied the claim in a reasoned opinion. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Wilson, 138 S. Ct. at 1192.

In denying the conspiracy instructional error claim, the California Court of Appeal stated:

> Quinonez claims the evidence did not warrant instructions regarding uncharged conspiracy liability. We disagree.
>
> **A. Additional Background**
>
> The court instructed the jury, at the People's request, it could find robbery proven by alternative liability theories: aiding and abetting or uncharged conspiracy. The uncharged conspiracy instruction explained, as relevant:
>
>> "The People have presented evidence of a conspiracy. A member of a conspiracy is criminally responsible for the acts or statements of any other member of the conspiracy done to help accomplish the goal of the conspiracy.
>>
>> "To prove that the defendant was a member of a conspiracy in this case, the People must prove that: One, the defendant intended to agree and did agree with [another person] to commit robbery; two, at the time of the agreement, the defendant and one or more of the alleged members of the conspiracy intended that one or more of them would commit robbery ....
>>
>> [¶] ... [¶]
>>
>> "The People must prove that the members of the alleged conspiracy had an agreement and intent to commit robbery. The People do not have to prove that any members of the alleged conspiracy actually met or came to a detailed or formal agreement to commit that crime.
>>
>> "An agreement may be inferred from conduct if you conclude that members of the alleged conspiracy acted with a common purpose to commit the crime.
>>
>> [¶] ... [¶]
>>
>> "A member of a conspiracy is ... criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of a conspiracy. This rule applies if the act was not intended as part of the original plan."
>
> The court also instructed the jury with standard aiding and abetting principles. Those instructions are not at issue.
>
> **B. Analysis**
>
> " '[U]ncharged conspiracy may properly be used to prove criminal liability for

acts of a coconspirator.' " (*People v. Valdez* (2012) 55 Cal.4th 82, 150.) For uncharged conspiracy liability to attach, the defendant must 1) agree, informally or formally, with a coconspirator to commit a target crime and 2) the coconspirator commits a separate crime 3) that is reasonably foreseeable and 4) is in furtherance of the conspiracy. (*People v. Prieto* (2003) 30 Cal.4th 226, 249-252; see *People v. Covarrubias* (2016) 1 Cal.5th 838, 902 [" 'natural and probable' and 'reasonably foreseeable' are equivalent concepts."].)

The question here is not whether the evidence actually proved each element of the uncharged conspiracy. That is a question for the jury. The question presented is whether substantial evidence justified the instruction. (*People v. Leon* (2020) 8 Cal.5th 831, 848 [" 'A trial court must give a requested instruction only if it is supported by substantial evidence, that is, evidence sufficient to deserve jury consideration.' "].) We conclude the evidence sufficiently warranted the instruction.

The evidence supported the following reasonable inferences. Quinonez acted in concert with two individuals. Under cover of darkness, the trio went to the convenience store together. After arriving, they first neutralized a potential witness. Quinonez and one individual then entered the store together and continued to act in concert by directly and immediately contacting the remaining obstacle, i.e., the store clerk. The third individual served as a lookout. After the unidentified individual stole the cigarettes, Quinonez shot the clerk and the trio fled together. These facts support a reasonable inference of a coordinated plan and constitute substantial evidence of an informal agreement to commit robbery.

The unidentified individual committed a completed robbery by stealing the cigarettes while Quinonez held the clerk at gunpoint. Quinonez does not argue otherwise.

The evidence strongly suggests the plan was to steal the cash in the register. It is reasonably foreseeable that committing a robbery in a convenience store may result in secondary robberies. These secondary robberies might range from neutralizing witnesses to obtaining other valuable merchandise or property in the store whether for personal consumption or gain. A plan to commit robbery at a convenience store for cash, especially a plan amongst juveniles, might reasonably result in the additional theft of cigarettes.

The evidence also substantially supports the cigarettes were taken in furtherance of the conspiracy. By taking the cigarettes from behind the counter, the two robbers instilled fear in the victim and placed the victim in a vulnerable position. The victim realized the robbers were serious threats. Instilling fear and surrounding the victim increased the odds of successfully completing the robbery.

In conclusion, the evidence justified giving the uncharged conspiracy instruction. We reject the contrary contention.

Quinonez, 2020 WL 4345100, at *1–3.

A federal court's inquiry on habeas review is not whether a challenged jury instruction "is undesirable, erroneous, or even 'universally condemned,' but [whether] it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414

1  U.S. 141, 146 (1973). The "only question for [a federal habeas court] is 'whether the ailing
2  instruction by itself so infected the entire trial that the resulting conviction violates due
3  process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147).

4  District courts addressing this issue have held that there is no clearly established federal
5  law that "constitutionally prohibits a trial court from instructing a jury with a factually
6  inapplicable but accurate statement of state law." Fernandez v. Montgomery, 182 F. Supp. 3d
7  991, 1013 (N.D. Cal. 2016). Accord Steele v. Holland, No. 15-cv-01084-BLF, 2017 WL
8  2021364, at *8 (N.D. Cal. May 12, 2017) ("Giving an instruction which is not supported by the
9  evidence is not a due process violation." (citation and alteration omitted)); Acajabon v. Espinoza,
10 No. 1:16-cv-00183-MJS (HC), 2017 WL 5608070, at *13 (E.D. Cal. Nov. 21, 2017).

11 The Court finds Griffin v. United States, 502 U.S. 46 (1991), to be instructive. Griffin
12 upheld a general guilty verdict where one of the possible bases of conviction, while legally valid,
13 was not supported by adequate evidence. Griffin reasoned:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence[.]

19 502 U.S. at 59 (citation omitted). The Supreme Court also noted that "if the evidence is
20 insufficient to support an alternative legal theory of liability, it would generally be preferable for
21 the court to give an instruction removing that theory from the jury's consideration. The refusal to
22 do so, however, does not provide an independent basis for reversing an otherwise valid
23 conviction." Id. at 60. Griffin's reasoning supports the conclusion here that if there was no
24 factual basis to instruct the jury on conspiracy, the jury would disregard the instruction and
25 render said instruction harmless. Therefore, the uncharged conspiracy instruction did not so
26 infect the trial with unfairness as to deny due process.

27 Accordingly, the Court finds that the state court's rejection of the instructional error
28 claim was not contrary to, or an unreasonable application of, clearly established federal law, nor

was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. Therefore, Petitioner is not entitled to habeas relief on his first claim, and it should be denied.

**B.  Imposition of Fines and Fees**

In his second claim for relief, Petitioner asserts that the trial court imposed fees and fines without first making a determination of Petitioner's ability to pay, in violation of due process. (ECF No. 8 at 4.) Respondent argues that this claim presents no federal question. (ECF No. 19 at 11.)

By statute, federal courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The fact that a petitioner is 'in custody' at the time of filing is 'insufficient to confer jurisdiction' because the petitioner must also meet the second 'in custody' requirement," which "precludes courts from reviewing a challenge to a non-custodial portion of a criminal sentence." Munoz v. Smith, 17 F.4th 1237, 1240–41 (9th Cir. 2021) (quoting Bailey v. Hill, 599 F.3d 976, 980, 981 (9th Cir. 2010)). "The fact that [Petitioner] seeks release from custody in addition to relief from his fine does not create jurisdiction to review the fine." Tuggle v. Campbell, 261 F. App'x 56, 58 (9th Cir. 2007) (citing United States v. Thiele, 314 F.3d 399, 402 (9th Cir. 2002)). See Phillips v. Cisneros, No. CV 20-2005-VAP (KS), 2021 WL 4497884, at *12 (C.D. Cal. Aug. 3, 2021), report and recommendation adopted sub nom. Phillips v. Sherman, No. EDCV 20-2005 VAP (KS), 2021 WL 4553055 (C.D. Cal. Oct. 5, 2021); Mason v. Kibler, No. 2:20-cv-02186-JKS, 2021 WL 663666, at *11 (E.D. Cal. Feb. 19, 2021). Accordingly, Petitioner is not entitled to habeas relief on his second claim, and it should be denied.

**V.**

**RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

1       This Findings and Recommendation is submitted to the assigned United States District 2 Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local 3 Rules of Practice for the United States District Court, Eastern District of California. Within 4 **THIRTY (30) days** after service of the Findings and Recommendation, any party may file 5 written objections with the court and serve a copy on all parties. Such a document should be 6 captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the 7 objections shall be served and filed within fourteen (14) days after service of the objections. The 8 assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 9 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may 10 waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 11 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 20, 2022**

UNITED STATES MAGISTRATE JUDGE